UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>United States of America</u>

    v.                                                          Criminal No. 20-cr-16-LM
                                                                                  Opinion No. 2024 DNH 013 P

<u>Idrissa Gasana</u>

**O R D E R**

The defendant, Idrissa Gasana, has been indicted on two counts of unlawfully procuring citizenship or naturalization; one count is brought under 18 U.S.C. § 1425(a) and the other is brought under § 1425(b). In general terms, the indictment alleges that Gasana lied about having participated in the Rwandan genocide on certain immigration documents or was otherwise ineligible for naturalization because he committed genocide. Presently before the court is Gasana's motion for a bill of particulars. Doc. no. 33. The government objects in part. A hearing on Gasana's motion took place on February 13, 2024. For the following reasons, the court denies doc. no. 33.

**STANDARD OF REVIEW**

"Motions for bills of particular are seldom employed in modern federal practice." United States v. Sepulveda, 15 F.3d 1161, 1192 (1st Cir. 1993); accord United States v. Kavalchuk, Crim. No. 09-cr-178-JD, 2011 WL 1898301, at *1 (D.N.H. May 17, 2011). "The function of a bill of particulars is to provide the

defendant with necessary details of the charges against him to enable him to prepare his defense, to avoid surprise [at] trial, and to protect against double jeopardy." United States v. Abreu, 952 F.2d 1458, 1469 (1st Cir. 1992). The decision to grant or deny a motion for a bill of particulars is committed to the district court's sound discretion. See id.

A motion for a bill of particulars will be granted "only if the accused, in the absence of a more detailed specification, will be disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause." Sepulveda, 15 F.3d at 1192-93. When considering whether a defendant has made the requisite showing, "courts may consider the complexity of the crime charged, the clarity of the indictment, and the degree of discovery and other sources of information otherwise available to the defendant[]." United States v. Ellison, 442 F. Supp. 3d 491, 496 (D.P.R. 2020) (quoting 1 Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure: Criminal § 130, at 658-59 (4th ed. 2008)) [hereinafter Wright & Leipold].

## BACKGROUND

I.   The Indictment

Count One of the indictment charges Gasana with violating 18 U.S.C. § 1425(a). That statute provides that it is unlawful to knowingly procure or attempt to procure the naturalization of any person "contrary to law." Count Two of the indictment charges Gasana with violating subsection (b) of that same statute.

Subsection (b) makes it unlawful to knowingly procure, obtain, or attempt to procure or obtain the naturalization of any person when "not entitled thereto."

Count One alleges that, on or about August 10, 2009, through February 19, 2010, Gasana "knowingly procured and attempted to procure his own naturalization contrary to law, that is, in violation of [18 U.S.C. §§ 1001(a)(2) & (3), 1015(a), and 1546(a)], by knowingly providing false and fraudulent information as to material facts on his Application for Naturalization, Form N-400, and in violation of the Immigration and Nationality Act." Doc. no. 1 ¶ 12. Count One expressly incorporates and re-alleges the paragraphs that precede it. Id. ¶ 11.

Count Two alleges that, on or about the same dates specified in Count One, Gasana, "who was not entitled to obtain naturalization for the reasons specified in paragraphs 4 through 10 [of this indictment], knowingly procured, obtained, and applied for, and attempted to procure and obtain naturalization and citizenship for himself." Id. ¶ 15.

In the preceding portions of the indictment, it is alleged that Gasana entered the United States on or about April 6, 2004, after having been granted refugee status by the United States government. Id. ¶ 1. It is further alleged that Gasana applied for lawful permanent resident status pursuant to a Form I-485 on or about June 16, 2005, and that this application was granted and his immigration status was adjusted from refugee to lawful permanent resident. Id. ¶ 2. Then, it is alleged that, on or about August 10, 2009, Gasana applied for citizenship pursuant to Form

3

N-400, that such application was approved, and that Gasana became a naturalized United States Citizen on or about February 19, 2010. Id. ¶ 3.

The indictment alleges that Gasana "provided false and fraudulent information as to material facts in his Application for Naturalization, Form N-400." Id. ¶ 4. It alleges that, at the time of his naturalization, Gasana was not lawfully admitted to the United States because: (1) "Gasana gained entry to and refugee status in the United States by providing false and fraudulent information as to material facts in a Registration for Classification as a Refugee, Form I-590, Sworn Statement of Refugee Appling [sic] for Entry into the United States, and 'Rwandan Questionnaire for Visa Applicants,'" id. ¶ 5; (2) "he applied for and received status as a lawful permanent resident of the United States by providing false and fraudulent information as to material facts in an Application to Register Permanent Residence or Adjust Status, Form I-485," id. ¶ 6; and (3) "he was an inadmissible alien who had engaged in conduct that is defined as 'genocide' in [18 U.S.C. § 1091]," id. ¶ 7. The indictment further alleges that Gasana could not satisfy the criteria for naturalization at the time he was naturalized because: (1) "he was not a person of 'good moral character,' in that he provided false statements for the purpose of obtaining immigration benefits," id. ¶ 8; and (2) "he was not a person of 'good moral character,' in that he had participated in genocide and in doing so committed numerous acts of violence, including murder, persecution, and theft," id. ¶ 9.

II.  Factual Background

Except where indicated, the following facts are taken from the parties' pleadings and the attachments thereto, which consist of portions of discovery provided by the government.

Over the course of approximately 100 days spanning April through July in 1994, extremist members of the Hutu ethnic group in Rwanda killed approximately 800,000 people, most of whom were members of the Tutsi ethnic group, moderate Hutus, or their political allies. When the Rwandan genocide ended, many persons who participated in the killings fled Rwanda to avoid reprisals. In 2003, Gasana applied to United States immigration authorities for refugee status while in Zambia. As part of this application process, Gasana, completed various forms. On these forms, Gasana, who is Hutu, represented that he left Rwanda in April 1994 because he was afraid he would be killed. He claimed that his family (but not he) returned to Rwanda in 2001, but that they were killed in 2002.

In order to complete his application for refugee status, Gasana was required to answer many questions on government-issued forms pertaining to whether he had any involvement in the Rwandan genocide or events surrounding it. On a form entitled "Sworn Statement of Refugee Applying for Admission into the United States," Gasana claimed, among other things, that he had:

- Never harmed any person because of their ethnicity;
- Never been a member of or affiliated with any totalitarian political party;
- Never participated in or been a member of an organization that participated in terrorist activities; and
- Never committed a crime.

5

On a form entitled "Rwandan Questionnaire for Visa Applicants," he denied:

- Being affected by the genocide;
- Being accused of participating in the genocide;
- Committing any acts of violence or theft during the genocide;
- Encouraging others to commit acts of violence or theft during the genocide;
- Being an employee of the Rwandan government prior to the conclusion of the genocide;
- Being a member of any armed forces in Rwanda; or
- Being a member of certain Rwandan political parties.

United States immigration authorities thereafter approved Gasana's application for refugee status, and he and his wife entered the United States in 2004 and settled in New Hampshire. In 2005, Gasana applied for lawful permanent resident status. On his Form I-485, submitted as part of his application, Gasana denied present or past membership in any political organizations, associations, parties, clubs, societies, or such similar groups since his 16th birthday, including foreign miliary service. Gasana's application was subsequently approved.

Gasana applied for citizenship status in 2009. As part of that process, he completed a Form N-400 and met with an immigration officer on two separate occasions to review the information on the form. On his Form N-400, Gasana denied:

- Having ever been a member of or associated with any organization, association, party, club, or society;
- Having ever been a member of or affiliated with the Communist party, any totalitarian party, or any terrorist organization;
- Ever advocating the overthrow of any government;
- Persecuting any person because of their race, religion, national origin, membership in a particular social group, or political opinion;
- Committing a crime or offense for which he was not arrested;

6

- Giving false or misleading information to any U.S. government official while applying for an immigration benefit; or
- Lying to any U.S. government official to gain entry to the U.S.

Gasana's Form N-400 and his application for citizenship were ultimately approved, and he became a naturalized U.S. citizen in February 2010.

In 2012, the Norwegian National Criminal Investigation Service notified U.S. officials that, in the course of investigating Gasana's older brother's involvement in the Rwandan genocide, it had learned of allegations that Gasana too had participated in the genocide. U.S. officials commenced an investigation into the allegations against Gasana. These officials learned of further evidence which they found corroborative of the allegations that Gasana participated in genocide, and which also revealed that Gasana's family had not been killed in 2002 after returning to Rwanda.

III.   Procedural Background

Gasana was indicted on the charges in this case in 2020, but the pandemic caused substantial delays in the case's progression and prevented international travel and access to potential witnesses. Counsel for the government recently returned from a trip to Rwanda to interview several individuals, and counsel for the defense traveled to Rwanda to conduct their own investigation in February of this year.

According to the defense, discovery from the government contains at least one hundred audio and video recordings, most of which lack transcripts. There are approximately 6,000 pages of reports, photographs, interviews, transcripts, and

7

handwritten documents. Much of the government's discovery comes from Norwegian law enforcement authorities and Rwandan courts, and while a large portion of the discovery has been translated into English, some of it remains in Norwegian or Kinyarwanda, or has been only roughly translated by a computer program. In addition, the government has interviewed twenty-five potential witnesses, who make wide-ranging allegations against Gasana from the wearing of an item of clothing with arguable political significance to participating in murderous night-time raids and committing murder.

## DISCUSSION

Gasana moves for a bill of particulars. Doc. no. 33. He contends that a bill of particulars is necessary because the indictment does not make clear which of his statements on the immigration documents described above were false, nor does it make clear the alleged acts that rendered him ineligible for naturalization or which made his attempt to naturalize contrary to law. The government has agreed to identify the statements it alleges Gasana falsely made which it will use to attempt to prove both Count One and Count Two.[1] However, the government objects to

---

[1] The government's partial objection indicates that the government does not object to identifying the alleged false statements Gasana made which rendered his attempt to procure naturalization "contrary to law." Doc. no. 34 at 1. Count One of the indictment alleges that Gasana's attempt to naturalize was "contrary to law" because he made false statements on his application for naturalization. Doc. no. 1 ¶ 12. Count One does not specifically allege that Gasana's attempt to procure naturalization was contrary to law insofar as he made false statements on other documents, including his refugee application materials or his application for lawful permanent resident status. Count Two, however, alleges that Gasana committed an offense by attempting to naturalize when he was "not entitled to" for the reasons

8

furnishing a formal bill of particulars with respect to these statements, and further objects to identifying the specific acts Gasana allegedly committed which rendered his statements false or which otherwise made him ineligible for naturalization. The government contends that Gasana's alleged acts are specified in discovery, such that Gasana would not be disabled from preparing a defense or avoiding unfair surprise in the absence of a bill of particulars.

      Federal Rule of Criminal Procedure 7(f) authorizes the defendant to request, and the court to order, that the government file a bill of particulars. "A bill of particulars is a formal written statement by the prosecutor providing details of the charges against the defendant." Ellison, 442 F. Supp. 3d at 496 (quoting Wright & Leipold, supra § 130). The legal effect of a bill of particulars "falls somewhere between a pleading and a discovery response." 5 Wayne R. LaFave et al., Criminal Procedure § 19.4(a) (4th ed.). "The factual allegations contained in the bill of particulars will limit the government's case at trial in the same manner as factual allegations in an original charging instrument." Id.; accord United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985). But see Wright & Leipold, supra § 130 (stating that "unimportant variances" between government's proof at trial and bill of

---

stated in paragraphs four through ten of the indictment—some of which allege that Gasana made false statements on his refugee application materials and his application for lawful permanent resident status. Id. ¶ 15; see id. ¶¶ 5-6, 8. At the hearing on Gasana's motion, the government made clear that it has no objection to notifying Gasana of all the statements it intends to prove Gasana falsely made on his respective applications for refugee status, lawful permanent resident status, and citizenship status insofar as the government will use proof of such statements' falsity for purposes of proving either count.

particulars "will be ignored"); United States v. Kaplan, 490 F.3d 110, 129 (2d Cir. 2007) (explaining that a court of appeals will reverse conviction on grounds of variance from bill of particulars only if the variance prejudiced the defendant).

"The Federal Rules of Criminal Procedure were amended in 1966 to liberalize discovery and to encourage courts to approach bills of particulars with more liberality." Ellison, 442 F. Supp. 3d at 496 (citing United States v. Leach, 427 F.2d 1107, 1110 (1st Cir. 1970) and Nesson v. United States, 388 F.2d 603, 604 (1st Cir. 1968) (per curiam)). The bill of particulars, however, is a device seldom employed. Sepulveda, 15 F.3d at 1192. Although the court has substantial discretion in the decision to grant or deny a motion for a bill of particulars, Abreu, 952 F.2d at 1469, a motion for a bill of particulars will be granted "only if the accused, in the absence of a more detailed specification, will be disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause." Sepulveda, 15 F.3d at 1192-93; see also Fed. R. Crim. P. 7(f) advisory committee's note to 1966 amendments (explaining that liberalization of criminal procedure rule governing bill of particulars was not intended to "tak[e] away the discretion which courts must have in dealing with such motions"). In other words, a court should not exercise its discretion to order the government to furnish a bill of particulars based on a finding that a bill of particulars would be merely helpful to the defendant; the court must determine that a bill of particulars is <u>necessary</u> to prepare a defense, avoid unfair surprise, or ensure that the defendant

can raise double jeopardy in a subsequent prosecution. See Ellison, 442 F. Supp. 3d at 496.

Here, Gasana focuses his argument on his ability to defend himself at trial and to avoid unfair surprise. As noted, when determining whether a bill of particulars is necessary to achieve these ends, courts consider the complexity and nature of the crime charged, the clarity and breadth of the indictment, the nature of the events that serve as the basis for the charge, and the extent to which the defendant has been provided with discovery or other information pertaining to the charge. Id.

The indictment is not particularly complex. It brings only two counts. The charges themselves—attempting to procure naturalization contrary to law or when not entitled thereto—are not themselves particularly complex. See Munyenyezi v. United States, 781 F.3d 532, 536-37 (1st Cir. 2015) (discussing elements of these offenses); Munyenyezi v. United States, 989 F.3d 161, 166-67 (1st Cir. 2021) (discussing materiality element of subsection (a) in light of Supreme Court's holding in Maslenjak v. United States, 582 U.S. 335 (2017)). With respect to Count One, the indictment identifies the specific form containing the alleged false and fraudulent information—Gasana's Application for Naturalization, Form N-400. With respect to Count Two, the indictment identifies the alleged reasons Gasana was not entitled to naturalization—he made false statements on specific immigration forms and he participated in genocide. The indictment's lack of complexity cuts against granting a motion for a bill of particulars. See United States v. Keleher, 505 F. Supp. 3d 41, 55

(D.P.R. 2020) (denying motion for bill of particulars where charge brought against defendant—conspiracy to commit honest services fraud—was "not overly complex").

In addition, the government has agreed to supplement the allegations in the indictment by informing Gasana of the specific statements on Gasana's immigration documents it intends to prove were false. Requiring the government to take the additional step of revealing to Gasana the acts it intends to prove he committed which made his statements false would give Gasana "a detailed preview of the government's trial evidence," which is not the purpose of a bill of particulars. Id. (quoting Wright & Leipold, supra § 130). A defendant is "not entitled [to] a bill of particulars to obtain details revealing the precise manner in which the government alleges he committed the crimes charged or the manner in which it will attempt to prove the charges." United States v. Faucette, Crim. No. 2:13-CR-79-DBH, 2013 WL 3458182, at *1 (D. Me. July 9, 2013). In other words, while the government has agreed to inform Gasana of the specific false statements it intends to prove at trial, that does not compel the government to reveal to Gasana why his statements were allegedly false.

Gasana has more traction, however, when the court considers the nature of the events which serve as the basis for the charges against him. As noted, Count Two of the indictment alleges in part that Gasana was not entitled to obtain naturalization because he committed genocide. A person is not entitled to naturalize if he lacks "good moral character." 8 U.S.C. § 1427(a). A person lacks good moral character if he "at any time has engaged in conduct described in [8 U.S.C.

12

§ 1182(a)(3)(E)] relating to . . . participation in genocide." 8 U.S.C. § 1101(f)(9). Section 1182(a)(3)(E) incorporates the definition of genocide set forth in 18 U.S.C. § 1091(a). See 8 U.S.C. § 1182(a)(3)(E)(ii).

Section 1091(a) provides a relatively broad definition of genocide. It defines genocide as follows:

> **(a) Basic Offense.** Whoever, whether in time of peace or in time of war and with the specific intent to destroy, in whole or in substantial part, a national, ethnic, racial, or religious group as such—
>
> (1) kills members of that group;
>
> (2) causes serious bodily injury to members of that group;
>
> (3) causes the permanent impairment of the mental faculties of that group through drugs, torture, or similar techniques;
>
> (4) subjects the group to conditions of life that are intended to cause the physical destruction of the group in whole or in part;
>
> (5) imposes measures intended to prevent births within the group; or
>
> (6) transfers by force children of the group to another group;
>
> Shall be punished as provided in subsection (b).

18 U.S.C. § 1091(a).

The indictment does not make clear the specific acts Gasana is alleged to have committed which constitute genocide. The applicable definition of genocide includes a wide range of actions, from killing, to causing serious bodily injury, to

13

torture, to dehumanization, to sterilization, to kidnapping. According to Gasana, discovery indicates that witnesses make sweeping allegations against him "ranging from wearing an item of clothing of arguable political significance . . . to participating in night raids, pulling Tutsis out of homes, threatening violence, manning roadblocks, handing out weapons, and participating in murder." Doc. no. 33 at 4. To the extent there is evidence that Gasana may have committed multiple acts which could constitute genocide, Gasana may be required to "prepar[e] a defense to a number of different methods of proof available to the government." United States v. Bailey, 689 F. Supp. 1463, 1474 (N.D. Ill. 1987). This cuts in favor of requiring the government to specify how it intends to prove Gasana committed genocide. See id.

At the same time, however, courts have widely held that, when the information a defendant seeks is available in discovery, a bill of particulars is inappropriate. E.g., United States v. Vaughn, 722 F.3d 918, 927 (7th Cir. 2013) (explaining that "a bill of particulars is unnecessary if the information the defendant seeks is readily available through alternate means such as discovery"); see Wright & Leipold, supra § 130 n.22 (collecting cases). Here, while the provided discovery is somewhat voluminous, Gasana has had a majority of it since shortly after he was indicted in 2020. "[N]o bill is required if the government has provided the desired information through pretrial discovery or in some other satisfactory manner." Keleher, 505 F. Supp. 3d at 55 (quoting Wright & Leipold).

14

Moreover, certain government filings have provided Gasana with additional notice of the acts the government intends to prove he committed. The government agreed to provide Gasana with a witness list prior to Gasana's counsel traveling to Rwanda to conduct investigation. See doc. nos. 30, 44. This allows Gasana and his counsel to prepare defenses to any allegations made by the government's witnesses well in advance of trial, and to seek to interview such witnesses. In addition, the government has filed a motion for a determination of foreign law, which reveals the alleged Rwandan criminal statutes the government believes Gasana may have violated in 1994. See doc. no. 39. This gives Gasana additional insight into the evidence contained in discovery that the government intends to adduce at trial.

For these reasons, Gasana has not shown that the issuance of a bill of particulars is necessary in order for him to prepare a defense or avoid unfair surprise at trial. His motion for a bill of particulars is therefore denied.

## CONCLUSION

Gasana's motion for a bill of particulars (doc. no. 33) is denied.

_____
Landya McCafferty
United States District Judge

February 28, 2024

cc:   Counsel of Record