UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                                     Criminal No. 20-cr-016-LM
                                                        Opinion No. 2024 DNH 064 P

Idrissa Gasana

**O R D E R**

The defendant, Idrissa Gasana, is charged with two counts of unlawfully procuring citizenship or naturalization contrary to 18 U.S.C. § 1425. The government will seek to prove the charges at trial by introducing evidence that Gasana lied on various immigration documents about having participated in the Rwandan genocide and about certain other matters that were allegedly material to his admission to the United States. Presently before the court is the government's renewed motion to depose Gasana's brother, Seleman Mudenge, who is a Rwandan national. See doc. no. 68. The government seeks to depose Mudenge in the United States. The court previously denied without prejudice the government's motion to depose Mudenge in Rwanda. See Endorsed Order of July 18, 2024 (denying doc. no. 40). For the following reasons, the government's renewed motion to depose Mudenge (doc. no. 68), this time in the United States, is denied.

BACKGROUND

Over the course of approximately 100 days spanning April through July in 1994, extremist members of the Hutu ethnic group in Rwanda killed approximately

800,000 people, most of whom were members of the Tutsi ethnic group, moderate Hutus, or their political allies. When the genocide ended, many persons who participated in the killings fled Rwanda to avoid reprisals.

In 2003, Gasana applied to United States immigration authorities for refugee status while in Zambia. As part of this application, Gasana completed various forms. Gasana, who is Hutu, represented on these forms that he left Rwanda in April 1994 because he feared he would be killed. He claimed that his father and his seven siblings fled the genocide to Tanzania. He also claimed that his father and siblings returned to Rwanda in 2001 but were killed in 2002.

One of these forms contained the names of the family members that Gasana claimed were killed in 2002 after returning to Rwanda. Mudenge is one of the family members listed. However, Mudenge did not die in 2002 and is alive to this day. According to the government, Mudenge would testify that their father died of illness and was not killed. Mudenge would also testify that three of the siblings Gasana claimed were killed in 2002 had actually died before the genocide.

Gasana's application for refugee status was approved, and he settled in New Hampshire. Gasana would later apply for lawful permanent resident status, and that application was granted. Then, in 2009, Gasana applied for citizenship. On his citizenship application materials, Gasana claimed that he had never given false or misleading information to a U.S. government official while applying for an immigration benefit, and further claimed that he had never lied to any U.S.

2

government official to gain entry to the United States. Gasana's application for citizenship was ultimately approved.

In 2012, the Norwegian National Criminal Investigation Service notified U.S. officials that, in the course of investigating Gasana's older brother's involvement in the Rwandan genocide, it had learned of allegations that Gasana too had participated in the genocide.[1] This led U.S. officials to commence an investigation into Gasana and whether he had committed genocide or otherwise lied on his immigration documents.

Special Agent Todd Donnelly interviewed Mudenge in September 2023 in Kibungo, Rwanda, the town where Mudenge resides. Kibungo is a small, rural village that lacks many of the amenities of a larger city, including ready access to electricity and running water. Special Agent Donnelly interviewed Mudenge again in November 2023. Mudenge traveled to the U.S. embassy in Kigali, Rwanda, to speak with Special Agent Donnelly.[2] It takes about three hours to drive from Kibungo to Kigali. In early December 2023, U.S. officials in Rwanda contacted Mudenge by telephone to gather additional information. Mudenge once again agreed to meet with U.S. officials in person to provide this information. On December 11, 2023, U.S. officials contacted Mudenge about meeting with them on

---

[1] Gasana did not include this brother—Sadi Bugingo—on his list of relatives when applying for refugee status.

[2] Donnelly interviewed Mudenge remotely from the United States.

3

December 12—the following day. Although Mudenge initially agreed to this meeting, he cancelled it on December 12.

Between December 13 and December 25, 2023, U.S. officials made several attempts to contact Mudenge by telephone to reschedule their meeting. The officials were unable to reach Mudenge or leave a voicemail on his phone. On January 17, 2024, Special Agent Donnelly was in Rwanda to investigate an unrelated matter. He asked an interpreter to attempt to contact Mudenge again by telephone while he was in Rwanda. Although the interpreter made two phone calls to Mudenge, she was unable to reach him.

Special Agent Donnelly then decided to travel to Mudenge's business in Kibungo. Special Agent Donnelly made contact with Mudenge at his store, and Mudenge agreed to speak with him. Special Agent Donnelly and Mudenge spoke in the Agent's vehicle outside Mudenge's business for approximately an hour. Mudenge said he did not want to travel to another location to speak with the Agent because no one else was available to mind his store. According to Special Agent Donnelly, Mudenge appeared physically uncomfortable while seated in the vehicle. Mudenge said that he has diabetes, and a portion of his leg had been amputated.

On February 22, 2024, Special Agent Donnelly called and spoke with Mudenge on the telephone. Mudenge stated that he would be willing to travel to the United States to attend Gasana's trial. Although U.S. officials once again had difficulty contacting Mudenge by telephone after this conversation, they were able to speak with him on June 11, 2024, to coordinate how Mudenge would complete the

paperwork necessary to obtain a visa to enter the United States for Gasana's trial. Mudenge agreed to set aside time on the following day to speak with an interpreter who would help him complete the visa application. Mudenge did in fact speak with the interpreter on June 12, 2024, and completed the visa application.

As noted, the government previously filed a motion seeking to depose Mudenge in Rwanda. See doc. no. 40. Gasana is not reasonably able to travel to Rwanda because he has been convicted in absentia in a Rwandan court of crimes pertaining to the genocide and sentenced to life in prison. The court found that the government had not satisfied all requirements needed to depose a witness in a foreign country in the defendant's absence. See Endorsed Order of July 18, 2024; Fed. R. Crim. P. 15(c)(3) (setting forth five criteria which must be satisfied to depose a witness outside the United States without the defendant's presence). Specifically, the court found that the government failed to demonstrate that it could not depose Mudenge in the United States. See Fed. R. Crim. P. 15(c)(3)(C). However, the court did not find that the government had otherwise satisfied all criteria to depose Mudenge. The court simply determined that the government's motion to depose Mudenge should be denied because one necessary criterion had not been satisfied.

On August 1, 2024, the government filed a renewed motion to depose Mudenge, this time in the United States. The government states that, since the

court's order, Mudenge has agreed to come to New Hampshire to sit for a deposition. The deposition has been tentatively scheduled for August 28, 2024.[3]

## DISCUSSION

Federal Rule of Criminal Procedure 15 allows for depositions of witnesses in criminal cases in limited circumstances. The purpose of a criminal deposition is not to discover evidence but "to preserve testimony for trial." Fed. R. Crim. P. 15(a)(1); accord, e.g., United States v. Cutler, 806 F.2d 933, 936 (9th Cir. 1986); United States v. Stottlar, No. 20-cr-61-JD, 2020 WL 6802394, at *1 (D.N.H. Nov. 19, 2020). Under Rule 15(a), a court "may" grant a motion to depose a witness "because of exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1).[4] While this standard confers discretion upon the district court to permit criminal depositions, "this discretion is not broad, and should be exercised carefully." United States v. Keithan, 751 F.2d 9, 12 (1st Cir. 1984); see also United States v. McKeeve, 131 F.3d 1, 8 (1st Cir. 1997) (observing that, while Rule 15 "may offer the only practicable means of procuring critical evidence" when the evidence takes the form of a foreign national's testimony, "[t]he use of deposition testimony in criminal trials

---

[3] The court draws the reasonable inference from this representation that Mudenge's application for a visa has been approved and that the government anticipates he will be permitted entry to the United States.

[4] Where the movant seeks to conduct a deposition in a foreign country without the defendant's presence, the movant must demonstrate certain additional criteria. See Fed. R. Crim. P. 15(c)(3)(C). In its order denying the government's motion to depose Mudenge in Rwanda, the court found that the government had not satisfied one of these additional criteria. However, the court's order made no findings as to whether the government had demonstrated that a deposition would be justified by "exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1).

[remains] disfavored, largely because such evidence tends to diminish a defendant's Sixth Amendment confrontation rights"). "The words 'exceptional circumstances' bespeak that only in extraordinary cases will depositions be compelled." United States v. Dillman, 15 F.3d 384, 389 (5th Cir. 1994). The party seeking the deposition has the burden of showing that exceptional circumstances are present such that a deposition is warranted and in the interest of justice. See In re Grand Jury Proceedings, 697 F. Supp. 2d 262, 272 (D.R.I. 2010); United States v. Poulin, 592 F. Supp. 2d 137, 145 (D. Me. 2008).

Rule 15(a) does not further define the "exceptional circumstances and in the interest of justice" standard. Previously, the Rule allowed only for depositions taken by the defendant (not the government), and only if the defendant made three specific showings: (1) that the witness "may be unable to attend or prevented from attending a trial or hearing"; (2) that the witness's "testimony is material"; and (3) "that it is necessary to take his deposition in order to prevent a failure of justice." In re United States, 348 F.2d 624, 625 (1st Cir. 1965) (quoting prior version of Rule 15); see also 2 Peter J. Henning, Federal Practice & Procedure Criminal § 241 & n.6 (4th ed.). Rule 15(a) was amended in 1975 to allow the government as well as the defendant to seek depositions, and to replace these three specific criteria with the "exceptional circumstances and in the interest of justice" standard. See Henning, supra.

It does not appear the First Circuit has had occasion to meaningfully construe this standard, see United States v. Bunnell, 201 F. Supp. 2d 169, 170-71

(D. Me. 2002), apart from making clear that it confers only a limited discretion upon district courts to allow criminal depositions, e.g., United States v. Mann, 590 F.2d 361, 365 (1st Cir. 1978). Most courts have held that, despite the changed language, Rule 15(a) continues to require the movant to demonstrate that the witness's testimony is material, along with some showing that the witness will be unavailable for trial. See, e.g., United States v. Ismaili, 828 F.2d 153, 159 (3d Cir. 1987) ("Notwithstanding the 1975 amendment of Rule 15(a), . . . considerations of materiality (of the testimony) and unavailability (of the witnesses) remain critical.").

At the same time, the language of Rule 15(a)—which provides that the court "may" allow a deposition if there are "exceptional circumstances and in the interest of justice"—suggests "that the court should review these motions on a case-by-case basis, examining whether the particular characteristics of each case constitute 'exceptional circumstances.'" Dillman, 15 F.3d at 389; see, e.g., Mann, 590 F.2d at 363, 365-66 (holding that district court abused its discretion in authorizing deposition of juvenile foreign national who had been apprehended attempting to smuggle drugs into the United States where the juvenile was the key witness against the defendant, the government could have detained her pending the defendant's trial or at least subpoenaed her and retained her passport, and "[i]t was clear that the prime reason for the deposition was the impermissible one of clearing the way for this critical witness to leave the court's jurisdiction" and return to her home country); United States v. Ferrera, 746 F.2d 908, 912-13 (1st Cir. 1984)

(Breyer, J.) (holding that district court did not abuse its discretion in denying motion for telephonic deposition because of, inter alia, "the practical and legal difficulties inherent in telephone depositions . . . and the failure to explain why more traditional methods could not be used"); United States v. Steele, 685 F.2d 793, 808-09 (3d Cir. 1982) (holding that district court did not abuse its discretion in authorizing depositions despite unknown significance of witnesses' testimony given "the extremely unusual circumstances of this case"); United States v. McLaughlin, 137 F.R.D. 198, 199-200 (D. Mass. 1991) (finding deposition warranted where, in addition to materiality and unavailability, the witnesses' testimony concerned matters bearing on defendant's insanity defense which the witnesses were likely to forget over time and which the defendant's expert needed well in advance of trial).

Thus, while the court will apply Rule 15(a) with an eye toward whether Mudenge's testimony is material and whether he should be considered "unavailable" for purposes of that rule, ultimately the court's conclusion must rest on an individualized assessment of the circumstances of this case. The court will begin its analysis with a brief discussion of the materiality of Mudenge's anticipated testimony. Then, the court will assess whether the government has sufficiently demonstrated Mudenge's unavailability for trial such that allowing a deposition would be justified by exceptional circumstances and in the interest of justice.

I. Mudenge's Testimony Is Material

Courts have formulated the standard for materiality under Rule 15(a) in various ways. Some courts have held it is the same as the standard for materiality

9

under Brady v. Maryland, 373 U.S. 83 (1963), at least where the defendant is the party seeking the deposition. See, e.g., United States v. Hajbeh, 284 F. Supp. 2d 380, 384-85 (E.D. Va. 2003). Other courts have phrased the test more broadly. See, e.g., United States v. Drogoul, 1 F.3d 1546, 1552 (11th Cir. 1993) (testimony is material if it is "critical to the case"); United States v. Vilar, 568 F. Supp. 2d 429, 440 (S.D.N.Y. 2008) ("Testimony is material if it is highly relevant to a central issue in the case." (quotation, brackets, and ellipsis omitted)); United States v. Thomas, 62 F.3d 1332, 1341 (11th Cir. 1995) (testimony was not material where it was cumulative of other evidence).

Regardless of the precise contours of materiality under Rule 15(a), Gasana does not dispute the importance of Mudenge's anticipated testimony to the government's case.[5] Both counts of the indictment allege that Gasana knowingly provided false information as to material facts when applying for refugee status and naturalization. The government has produced evidence that, when applying for refugee status, Gasana claimed that his father and seven siblings fled Rwanda during the genocide, returned in 2001, and were killed in 2002. The government theorizes that Gasana made these claims to "bolster" his refugee application. See 8 U.S.C. § 1101(a)(42) (defining "refugee" in pertinent part as "any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of

---

[5] Gasana expressly stated at the hearing on the government's original motion to depose Mudenge that he is not disputing materiality.

10

persecution"). Mudenge is among the siblings Gasana allegedly claimed had been killed in 2002. The mere fact of Mudenge's presence at trial would provide incontrovertible proof that Gasana erroneously reported Mudenge's fate. In addition, Mudenge would contradict Gasana's account as to how their father died, as well as three of their siblings. For these reasons, and given the lack of dispute as to the import of Mudenge's anticipated testimony, the court finds sufficient materiality.

II. The Government Has Not Shown that Mudenge Is Unavailable Such That a Deposition Is Justified by Exceptional Circumstances and in the Interest of Justice

Courts have applied the definition of unavailability in Federal Rule of Evidence 804(a) in determining whether a witness is unavailable for purposes of Rule 15(a). See United States v. Sanford, Ltd., 860 F. Supp. 2d 1, 4 (D.D.C. 2012); see also, e.g., Grand Jury, 697 F. Supp. 2d at 273. Rule 804(a) provides in pertinent part that a witness is unavailable when the witness "is absent from the trial or hearing and the [witness's] proponent has not been able, by process or other reasonable means, to procure" the witness's attendance. Fed. R. Evid. 804(a)(5). For purposes of Rule 15(a), the movant need not conclusively establish that it will be unable to secure the witness's attendance at trial through process or other reasonable means. Drogoul, 1 F.3d at 1553. Rather, the movant need only establish a "substantial likelihood" that it will be unable to secure the witness's presence at trial. Id.

11

In this case, the government contends that there is a substantial likelihood Mudenge will be absent from trial because he is a Rwandan national living in Rwanda and therefore cannot be compelled to testify. Moreover, the government contends that Mudenge is unlikely to attend trial voluntarily because his health conditions make international travel difficult, and because, as Gasana's brother, it is not likely he would willingly travel to the United States to implicate Gasana in serious crimes. Although the government notes that Mudenge has met with U.S. officials on several occasions, the government claims his "cooperation is inconsistent," which further warrants a finding that Mudenge is likely to be absent from trial. Doc. no. 52 at 2.

The government's posited reasons as to why Mudenge will not voluntarily appear at trial are not persuasive. According to Special Agent Donnelly, Mudenge suffers from diabetes and has a partially amputated leg. Mudenge's health conditions, however, did not stop him from making a three-hour drive from his home in rural Kibungo to Kigali, a major city, at the request of U.S. officials to discuss Gasana. Nor have his health conditions prevented him from running a business in Kibungo. Mudenge himself seems to believe he can travel to the United States, as he has agreed to come to the United States for a deposition, return to the United States for a trial, and has successfully obtained a visa to allow him to do both of these things. For similar reasons, the government's argument that Mudenge is not likely to voluntarily appear at trial to testify against his brother is not persuasive. Mudenge has met with U.S. officials to discuss Gasana at least three

12

times and has travelled lengthy distances within Rwanda to do so. And, of course, Mudenge has already agreed to testify against Gasana at a trial in the United States.

The government nevertheless contends that there is a substantial likelihood that Mudenge will not appear for trial because he cannot be subpoenaed and because, given Mudenge's "inconsistent" cooperation with U.S. officials, it is possible he could change his mind about coming to trial voluntarily. To the extent Mudenge's cooperation in the case against Gasana has been "inconsistent," however, the court does not find any such inconsistency to present an exceptional circumstance warranting the extraordinary relief of a Rule 15 deposition. Mudenge met with U.S. officials in September 2023, again in November 2023, and a third time in January 2023. The November meeting required Mudenge to make a lengthy drive from his home in Kibungo to Kigali. The January meeting entailed a U.S. Special Agent showing up to Mudenge's place of business unannounced in the middle of a workday and required Mudenge to sit outside his store with no one else minding the shop. Mudenge then agreed to work with a translator to prepare a visa application, did in fact prepare and submit this application, and ultimately obtained a visa. While the government contends that Mudenge has been difficult to contact via telephone, the evidence shows that—with one exception—Mudenge has met with U.S. officials every time they've asked him to do so.[6] It is commonplace for litigants to struggle at

---

[6] That one exception pertains to the attempted meeting in December 2023. Mudenge agreed sometime in early December 2023 to meet with U.S. officials in that

13

times to contact lay witnesses in the periods between interviews and trial. It is not at all surprising that it has occasionally been difficult for the government to contact Mudenge given that he lives in a rural area of Rwanda with limited access to electricity. The asserted difficulties in contacting Mudenge do not suggest he is likely to change his mind about attending Gasana's trial given Mudenge's substantial cooperation with U.S. officials to date.

That leaves only the government's contention that Mudenge should be considered unavailable for purposes of Rule 15(a) because he is outside the court's subpoena power. The government essentially contends that a witness is automatically considered unavailable under Rule 15(a) if he is beyond the court's subpoena power. See doc. no. 40 at 9. It is true that, as a foreign national residing outside the United States, the government cannot compel Mudenge to attend trial. See Fed. R. Crim. P. 17(e)(2); 28 U.S.C. § 1783(a); United States v. Aboshady, 951 F.3d 1, 11 (1st Cir. 2020). Courts have tended to place significant weight on a witness's amenability to process in determining whether they are unavailable under Rule 15(a). See, e.g., Drogoul, 1 F.3d at 1557. At the same time, courts have also cautioned that a "witness who resides abroad and outside the reach of a court's subpoena power is not automatically 'unavailable' without a further showing that he or she will not testify in court." Sanford, 860 F. Supp. 2d at 4 (quoting United

---

month. However, the officials contacted Mudenge on December 11 to arrange for a meeting the following day. The court does not find that Mudenge's refusal to meet with officials on one day's notice suggests he is insincere in stating his willingness to travel to the United States for trial.

14

States v. Warren, 713 F. Supp. 2d 1, 4 (D.D.C. 2010)); see also, e.g., United States v. Wag-Aero, Inc., 888 F. Supp. 101, 102-03 (E.D. Wis. 1995) (denying motion to depose Japanese and Chinese nationals residing in those countries because movant failed to show "that the individuals would not voluntarily appear for trial"). The movant must use "reasonable means" other than process to secure the witness's voluntary attendance at trial, Fed. R. Evid. 804(a)(5), then return to court seeking a Rule 15(a) deposition if, despite the movant's efforts, a substantial likelihood remains that the witness will not appear. United States v. Straker, 567 F. Supp. 2d 174, 180-81 (D.D.C. 2008). In the particular circumstances of this case, the fact that Mudenge cannot be compelled to attend trial does not present an exceptional circumstance such that the extraordinary relief of a criminal deposition is in the interest of justice.

      The government overstates the extent to which courts have found foreign nationals residing abroad to be unavailable for purposes of Rule 15(a) merely because they cannot be subpoenaed. The primary case relied upon by the government for this proposition is the Eleventh Circuit's opinion in Drogoul. In that case, the government sought to depose thirteen Italian nationals. 1 F.3d at 1550. Seven of the witnesses declared that they would not voluntarily attend trial, and the remaining six declared that they would. Id. The district court denied the government's motion as to all thirteen witnesses, and the Eleventh Circuit held that the court abused its discretion in so doing. Id. at 1550-52.

15

On appeal, the Eleventh Circuit analyzed the two groups of witnesses separately: those who declared they would not attend trial, and those who declared that they would. Id. at 1552. The court concluded that several circumstances demonstrated a substantial likelihood that the former group would not attend trial. See id. at 1553. First, they could not be subpoenaed. Id. Second, while a treaty between the United States and Italy allowed the Italian government to sanction the witnesses for refusing to abide by an order from an Italian court to attend the U.S. trial, those sanctions did not include removal to the United States. Id. Finally, the government produced "a letter from an Italian judicial officer . . . certifying that the seven witnesses have declared in open court their unwillingness to testify in the United States." Id. Taken together, the Eleventh Circuit found these circumstances to be "potent proof of unavailability for purposes of Rule 15(a)." Id.

In addition, the court found that "[e]xceptional circumstances and the interests of justice also warrant allowing the government to take the depositions of the six prospective witnesses who announced they would be willing to testify at Drogoul's trial." Id. at 1557. The court noted that the government's showing as to these witnesses was "obviously not as strong" because, "[i]n the ordinary case exceptional circumstances do not exist when the prospective deponent has declared that he or she is willing to testify at trial." Id. The Eleventh Circuit explained that "[t]he instant case, however, is not ordinary" because the parties were already going to "spend the time, money, and energy to take depositions in Italy" of the seven witnesses who were not willing to attend the trial. Id. At the same time, if the

16

witnesses were not deposed and any of them changed their mind about attending trial, "it would be impossible for the government to present their testimony." Id. The court found that this would be a "serious consequence" to the government given that the witnesses' testimony was "highly material to the central issue" in the case and that allowing the witnesses to be deposed "would involve the expenditure of only marginally more time, money, and effort." Id. Ultimately, the court concluded that "three factors together" demonstrated exceptional circumstances to satisfy Rule 15(a): (1) the strong materiality of the witnesses' anticipated testimony; (2) the fact that the witnesses could not be compelled to testify; and (3) "critically, the fact that the parties already must take depositions in Italy." Id. (emphasis in original).

As this discussion makes clear, Drogoul does not stand for the proposition that a proposed deponent is considered unavailable under Rule 15(a) whenever he is beyond the subpoena power of the court. To the contrary, Drogoul reaffirmed that, as a general matter, Rule 15 does not permit depositions of witnesses that have declared their willingness to testify at trial. Id. The "critical[ ]" finding on which the court based its holding was that the parties were already expending the time, resources, and energy to depose seven witnesses in Italy anyway. Id. (emphasis omitted). This finding, in combination with the strong materiality of the witnesses' testimony and the fact that they were not subject to process demonstrated exceptional circumstances justifying the taking of depositions. Id.

The other cases relied upon by the government are materially similar to Drogoul—cases in which the court placed significant weight upon a witness's non-

17

amenability to process without concluding that being outside the reach of a subpoena makes a witness per se unavailable for purposes of Rule 15(a). See United States v. Cooper, 947 F. Supp. 2d 108, 113-14 (D.D.C. 2013) (finding Indonesian witnesses unavailable where available information suggested that Indonesian government would not allow the witnesses to travel outside the country, Indonesian officials had prevented the U.S. government from contacting the witnesses to ascertain whether they would attend trial voluntarily if they could, and the witnesses could not be subpoenaed); United States v. Vo, 53 F. Supp. 3d 77, 81 (D.D.C. 2014) (finding Vietnamese witness unavailable where she was about to be deported back to Vietnam from Bureau of Prisons' custody, she would be beyond the court's subpoena power once in Vietnam, "and even if she wanted to testify voluntarily, she likely would have trouble re-entering the United States to do so because of her conviction"). None of them stand for the proposition asserted by the government. Indeed, it would be inconsistent with the discretionary standard of Rule 15(a)—providing that a court "may" order a deposition given "exceptional circumstances and in the interest of justice"—to hold that a witness should be considered unavailable based on a categorical rule triggered by a single circumstance: inability to compel attendance at trial. See, e.g., Mann, 590 F.2d at 363, 365-66.

      Especially in the circumstances of this case, the fact that Mudenge is a Rwandan national residing in Rwanda does not constitute an exceptional circumstance such that a deposition is warranted. Although the government

18

seemingly intends to introduce Mudenge's testimony for the relatively limited purpose of attempting to prove that Gasana lied about the fate of his family after the genocide, the crux of the government's case against Gasana is that he lied on various immigration documents about not having participated in the Rwandan genocide. Currently pending before this court is a motion to suppress several Rwandan witnesses' testimony on due process grounds, all of whom implicate Gasana in acts pertaining to the genocide to varying extents. See doc. nos. 35, 49, 60. To prove the case against Gasana, the government plans to introduce the testimony of numerous Rwandan witnesses, all of whom would appear to be beyond the reach of this court's subpoena power. Yet if the fact of Mudenge's non-amenability to process constituted an exceptional circumstance justifying a deposition to preserve his material testimony, so too would there be sufficient justification to depose the other Rwandan witnesses as well. "Allowing depositions too freely would create the risk that parties would seek to use depositions as a discovery device in criminal cases or would try to use depositions in lieu of live testimony at trial in contravention of the spirit of the Sixth Amendment." Mann, 590 F.2d at 365 (citation omitted); see also McKeeve, 131 F.3d at 8. Given the First Circuit's admonitions against expanding the use of Rule 15 depositions beyond their proper bounds, the circumstances of this case strongly suggest that the government's inability to subpoena Mudenge does not constitute an exceptional circumstance.

In sum, none of the reasons proffered by the government—individually or taken together—establish a substantial likelihood that Mudenge will not appear for trial. To the contrary, all indications at this juncture are that it is substantially likely that the government will be able to procure Mudenge's appearance at trial through the use of reasonable means. Therefore, the government has not demonstrated that Mudenge is unavailable such that a deposition is justified by exceptional circumstances and in the interest of justice.

## CONCLUSION

The government's renewed motion to depose Seleman Mudenge (doc. no. 68) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 12, 2024
cc:   Counsel of Record